BODMAN *v.* BRIZZOLARA.

4-9746                                          248 S. W. 2d 886

Opinion delivered May 19, 1952.

*Moore, Burrow, Chowning & Mitchell* and *John E. Coates, Jr.,* for appellant.

*Henry E. Spitzberg,* for appellee.

WARD, J. Appellant brought this suit in the lower court to collect the sum of $11,500 as his commission, at five per cent, for negotiating a sale of property at 417 Main Street, in Little Rock, belonging to appellee, to William A. Stern for the sum of $230,000. The suit was based on a written contract, the material parts of which will be set out hereinafter. After a jury trial judgment was entered in favor of appellee, hence this appeal.

Appellant has brought forward many objections to the instructions given by the lower court and has ably discussed them in his brief, but we find it unnecessary to consider the merits of these objections because we are of the opinion that the lower court should have instructed a verdict for appellee. The material facts supporting the allegations in appellant's complaint are set out below.

Appellee, who owned the said property and was seeking to sell the same for some months before appellant entered the picture, had consistently refused to give any real estate agent the exclusive right to sell the same, although more than one such agent had been trying to effect a sale. One agency, Read-Stevenson & Dick, was trying to find a buyer and in July, 1950, it showed the property to the said William A. Stern who, on August 3, 1950, made an offer of $200,000 and put up his personal check for $1,000. This offer had not been accepted by appellee, but it was still in force and the check was still being held by the agency when, on October 10, 1950, appellee gave a five-day exclusive contract to appellant which, in all material parts, reads as follows:

"October 10, 1950

"For and in consideration of the services rendered and to be rendered by E. J. Bodman & Co., I hereby authorize said company to negotiate a contract for an option to purchase my property described below: (property described)

"Said E. J. Bodman & Co. shall have the sole and exclusive right to negotiate for said option and sale until October 15th, 1950, and is protected in the event of sale to the *parties he is negotiating with* (emphasis ours) for a period of one year from date, if the property is sold to *his parties* (emphasis ours) provided he on or before October 15th, 1950, furnishes me with their names in written form. . . .

"The sale of this property to be sold under this option shall be for $300,000. . . .

"If option is secured and is exercised by the buyer, and sale consummated I agree to pay said E. J. Bodman & Co., the customary commission on the gross amount of the sale.

(signed) A. Brizzolara".

On October 11, 1950, appellant wrote appellee the following letter:

"The party that I am endeavoring to purchase the option to buy the Main Street property, Lot 5 (N41 Feet) Block 5, Original City of Little Rock is William Stern, Buyer for Pfeifers, also Sam Strauss and Leo Pfeifer.

"I will keep you posted as negotiations progress. Strauss and Stern will return to the office Friday morning.

"Yours

E. J. Bodman".

The latter part of November, 1950, the Block Realty Company of Little Rock negotiated a sale of the property to William A. Stern for $230,000 and appellee executed a deed to Stern on the 14th of December, 1950. Appellant relies on the one year protective clause in his contract as a basis for his commission.

The undisputed proof and the proof most favorable to appellant show the following facts and circumstances leading up to the contract and regarding what happened after the five days expired and before the sale to Stern.

Appellant is and has been for several years a licensed real estate broker or agent, and he and appellee have

been close personal and business friends for many years. From about 1919 until about 1933 they were officers in the same bank in Little Rock with adjoining desks. Appellant had asked appellee for an exclusive listing of the property for a period of ninety days but was refused but finally it was agreed a five day exclusive contract would be entered into and appellant wrote the one set out above and appellee signed it on the 10th day of October. Appellant had never met Stern and did not know him at that time—in fact Stern was in New York and had been for a few days. Previous to the signing of the contract appellant had not contacted anyone regarding the purchase of this property. Immediately after the contract was signed, on the same day, appellant had a conversation with Mr. Leo Pfeifer, who is Stern's uncle by marriage, explained the terms and conditions under which the property could be bought and asked him to phone Mr. Stern who was in New York. Mr. Pfeifer did not or was not able to contact Stern. Mr. Stern returned to Little Rock on the 14th or 15th and appellant went to see him at his office on the morning of the 15th. Appellant offered Stern the property for the price of $300,000 and Stern promptly rejected the offer. Appellant told Stern that appellee had turned down $275,000 for the property [although appellee denied making any such statement to appellant] and as a result Stern called up the agency which held his $1,000 check mentioned above and had it returned to him. Almost immediately after appellant left Stern he contacted appellee and told of the result of his conversation with Stern and Stern's reaction, and further explained to appellee that Stern needed more education about Main Street value and asked appellee to allow him to continue his negotiations, and that he believed he could educate Stern. Appellee told him to go ahead. Appellant saw Stern only one more time before the property was sold and that was in early November. On this occasion he told Stern the "prices of the northeast 4th & Main and the northwest of 8th & Main, Charles McCain".

Considering the above facts and circumstances and considering the peculiar wording of the contract of Oc-

tober 10th, we think the only fair and reasonable interpretation to place on the contract is: (1) Appellant had a prospective buyer with whom he had been negotiating and to whom he thought he could sell the property for $300,000. It did not contemplate that appellant would attempt to sell to some prospective buyer who was already negotiating with appellee or some agency on his behalf. It is not reasonable that appellee, who at all times steadily refused to give an exclusive listing, would sacrifice his better judgment just in order to have appellant contact someone with whom he [appellee] was already negotiating. Stern had already made an offer on the property and made a deposit of $1,000. It would not be unreasonable to interpret the contract to mean that appellant had a right to negotiate with Stern [in this instance] if we also interpret it to mean that appellant could do so only for the purpose of persuading Stern to pay $300,000. This, of course, he was unable to do. In no way did appellant render any service to appellee. He did not produce Stern as a prospective buyer because Stern was already trying to buy the property when appellant first contacted him, and he was not negotiating with Stern when the contract was signed because he did not even know Stern at that time. (2) Of course if appellant cannot qualify under the five-day term of the contract he cannot avail himself of the one-year protective clause. Neither can appellant prevail on the ground that when he reported to appellee on the 15th of October, appellee extended the time for negotiations. The most this extension could amount to was to give appellant a chance to "educate" Stern, but he not only did not succeed in this but, according to appellant's testimony, he made little if any effort to educate him.

In our opinion this case is governed by the holding in the case of *Johnson* v. *Knowles,* 169 Ark. 1089, 277 S. W. 868. The opinion was based on the following essential facts:

Mrs. Knowles, as a real estate agent, had listed for sale a house belonging to Johnson. By advertising in a newspaper she contacted a Mrs. Smith and showed her

the house in question, but Mrs. Smith refused to buy at that time because the house faced west. Two or three months later Mrs. Smith rented the house from Johnson and after living there one month bought the property from Johnson while it was still listed with Mrs. Knowles. The question was whether Mrs. Knowles was entitled to a commission. Among other things the court said:

"The sale in the present suit did not result from any act or course of conduct whatever of the plaintiff [Mrs. Knowles]. According to her own testimony she showed the house in question to Mrs. Smith, and the latter declined to purchase it because it had a west front. The plaintiff failed to sell Mrs. Smith a house across the street with an east front, because they could not agree on taking in exchange some property which Mrs. Smith owned in Oklahoma. Then the transaction so far as the plaintiff was concerned ended.

"It is true that, according to the testimony of the plaintiff, the property was still listed with her, but she had nothing whatever to do with making the sale. It may be that after Mrs. Smith had lived in a house with a west front for a while her objection to that kind of a house was removed; but, be that as it may, she had definitely declined to purchase the property when it was shown to her by the plaintiff, and the matter was closed so far as the plaintiff was concerned."

The judgment of the lower court in favor of Mrs. Knowles was reversed and her cause of action dismissed.

It appears to us that the facts in the above case supporting Mrs. Knowles' claim for a commission were much stronger than the facts supporting appellant's claim in this case.

There is another reason, or perhaps it is more accurate to say there is a reason explained in a different way, why we think the lower court should have directed a verdict for appellee.

The second paragraph of the contract copied above provides, in effect, that appellant would be protected if appellee later sold the property to anyone with whom

appellant was *negotiating* during the five-day period. This interpretation, it might be noted, is most favorable to appellant because it is susceptible to the meaning that appellant must be negotiating with Stern at the time the contract was signed. Taking the former interpretation, it is our opinion that the evidence does not show that appellant was *negotiating* with Stern during the five-day period. It is undisputed that long before appellant secured the contract from appellee Stern knew of the property, was interested in buying, and had deposited a check for $1,000 in an effort to buy at the price of $200,000; and it is also undisputed that the net result of the only contact appellant had with Stern during the five-day period was a flat rejection of the offer to sell him the property at $300,000.

The term "negotiations" was defined in the case of *Werner* v. *Hendricks, et al.,* 121 Pa. Supr. 46, 182 A. 748. The opinion in dealing with a situation similar to the one presented here used, among other language, the following:

"Negotiation presupposes a mutual interest in the subject-matter and merely directing one's attention without further enlisting interest or discussion falls far short of negotiations. The mere offer or solicitation, which meets with prompt refusal or rejection having no effect whatever upon the subsequent purchase of the route, cannot be regarded as negotiations within the meaning of the contract."

The same term was considered in the case of *Bullis & Thomas* v. *Calvert,* 162 La. 378, 110 So. 621, where a real estate agent was claiming a commission of $17,500 for having *negotiated* with one Morgan who later purchased certain lands. The terms of the contract under which the agent claimed a commission and the attending facts are in many respects similar to those of the case before us. In denying recovery to the agent the court summarized its reasons in this language:

"Hence our conclusion is: (1) That plaintiffs were not the first to interest Morgan in the lands which they had for sale; and (2) that plaintiffs were not negotiating

with Morgan during the term of the contract (or even during the alleged extension thereof) in such manner as to interest him as a likely purchaser thereof, or beyond the mere fact of advising him that the land was for sale but could not be purchased for the price which he deemed willing to give for it.

"It is our opinion that, when the contract was made, defendants had not in contemplation the payment of a commission for services no more valuable to them than the above."

For the reasons stated above the judgment of the lower court is affirmed.

The Chief Justice and Justice McFADDIN dissent.

Justice ROBINSON not participating.

ED. F. McFADDIN, Justice (Dissenting). Some of the instructions given by the trial court were erroneous and prejudicial, and required a reversal of the judgment in this case. The testimony for appellant and the testimony for appellee are in irreconcilable conflict. As I read the evidence, a question of fact was made for the jury.

Therefore, I dissent from the majority opinion, which holds that the appellee was entitled to an instructed verdict. The Chief Justice joins in this dissent.